UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SALAHUDDIN F. SMART, et al., | : | |
| Plaintiffs, | : | Civ. No. 14-2302 (RBK) (AMD) |
| v. | : | **OPINION** |
| INTENSIVE SUPERVISION PROGRAM, et al., | : | |
| Defendants. | : | |

**ROBERT B. KUGLER, U.S.D.J.**

## I.   INTRODUCTION

Plaintiff, Salahuddin F. Smart, is incarcerated at the Jones Farm in West Trenton, New Jersey. Plaintiff, Michael Nichols, is incarcerated at the Camden County Correctional Facility in Camden, New Jersey. They are proceeding *pro se* with a civil rights complaint filed pursuant to 42 U.S.C. § 1983. The plaintiffs have not paid the filing fee and only Smart has submitted an application to proceed *in forma pauperis*.

## II.   MULTIPLE PLAINTIFFS

Before screening the complaint, the Court must address a procedural issue associated with this case. Federal Rule of Civil Procedure 20 governs the permissible joinder of plaintiffs and states in relevant part:

> (1) Plaintiffs. Persons may join in one action as plaintiffs if:
> (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> (B) any question of law or fact common to all plaintiffs will arise in the action.

1

FED. R. CIV. P. 20(a)(1). Joinder under Rule 20 is discretionary and when the Court exercises that discretion, it "must provide a reasoned analysis that comports with the requirement of the Rule, and that is based on the specific fact pattern presented by the plaintiffs and claims before the court." *Hagan v. Rogers*, 570 F.3d 146, 157 (3d Cir. 2009).

In this case, only one plaintiff, Smart, has submitted an application to proceed *in forma pauperis*. Where more than one prisoner seeks to join in a complaint against a government official or entity, the plaintiffs may prepay a single $400.00 filing fee or seek *in forma pauperis* status. *See Hagan*, 570 F.3d at 150; *Miller v. New Jersey*, No. 13-2018, 2013 WL 2149692, at *2 (D.N.J. May 16, 2013) (citations omitted). In the event that multiple prisoners seek to join as plaintiffs and they do not prepay the $400.00 filing fee, then each plaintiff must submit a complete application to proceed *in forma pauperis* if he desires the complaint to be filed on his behalf. *See Hagan*, 570 F.3d at 154-55. In that situation, if the Court permits more than one prisoner to join as a plaintiff under Rule 20, then the Court is required to collect a $350.00[1] filing fee from each prisoner-plaintiff by directing the agency having custody of each prisoner to deduce the filing fee in monthly installments from each prisoner's account as if each prisoner were filing his own individual complaint. *See id.* at 155-56.

In this case, only Smart submitted an application to proceed *in forma pauperis*.[2] The other plaintiff, Nichols, may not have known about the filing fee requirement. Thus, plaintiff Nichols will be administratively terminated from this action and the Court will screen the complaint as it relates to Smart only.

---

[1] A prisoner-plaintiff who is pursuing his case *in forma pauperis* does not owe the $50.00 administrative fee that he would owe if he pre-paid the filing fee.
[2] Smart was also the only person to sign the complaint. Thus, Nichols is in violation of Federal Rule of Civil Procedure 11(a) which requires an unrepresented person to sign the complaint personally.

Smart's application to proceed *in forma pauperis* will be granted based on the information provided therein. Accordingly, at this time, the complaint as to Smart will be screened pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from suit. For the reasons set forth below, the complaint will be permitted to proceed in part.

### III.   BACKGROUND

Smart is in the Intensive Supervision Program ("ISP"). Defendant Craig Fox is an officer within the ISP and entered plaintiff's home in December, 2013 to conduct a urinalysis procedure. Fox stayed in the bathroom to watch Smart urinate. Smart states that the officer remained outside of the bathroom with the door open when he underwent urinalysis at the ISP office. Fox was purportedly standing shoulder to shoulder with Smart in the bathroom. After getting frustrated with Smart, Fox told him to pull his pants down, which Smart did for fear of being sent back to jail. This exposed Smart's penis to Fox despite the alleged fact that there was no reasonable suspicion for Fox to act this way.

Smart claims that this constituted an unreasonable search in violation of the Fourth Amendment. Furthermore, Smart alleges that the ISP, ISP Southern Regional Office, ISP Supervision Regional Manager and Shirley Lennon - ISP Regional Supervisor are also liable on this claim based on a failure to train/supervise theory in regards to the proper way to conduct a urinalysis test.

Smart also alleges that Lennon has violated his procedural due process rights and right to a speedy trial. He claims that he has had to call the Trenton ISP office to get him a speedy trial court date. Smart claims his girlfriend was in constant contact with the ISP manager. Smart

asserts that his court date would have been four to six months later than May, 2014 if he had not been so proactive. He claims that his Sixth and Fourteenth Amendment rights have been violated due to this purported lack of a speedy trial.

Smart seeks both monetary damages and injunctive relief for his claims.

### IV.   STANDARD OF REVIEW

A. <u>Standard for *Sua Sponte* Dismissal</u>

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (Apr. 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 42 U.S.C. § 1997e. The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

According to the Supreme Court's decision in *Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive *sua sponte* screening for failure to state a claim[3], the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads

---

[3] "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (per curiam) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (per curiam) (discussing 28 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 483 n.17 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).  Moreover, while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).

  B. <u>Section 1983 Actions</u>

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law.  *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

## V. DISCUSSION

A. <u>Speedy Trial/Due Process Claim</u>

At the time Smart filed this complaint, it appears that his criminal proceedings were ongoing. Smart's due process and speedy trial claims are not cognizable under § 1983 based on *Younger v. Harris*, 401 U.S. 37 (1971) abstention. *Younger* abstention forbids federal interference in pending state court proceedings.[4] Indeed, federal courts should not permit the claimed denial of a speedy trial to derail the state proceedings. *See Moore v. DeYoung*, 515 F.2d 437, 446 (3d Cir. 1975); *see also Duran v. Weeks*, 399 F. App'x 756, 758-59 (3d Cir. 2010) (per curiam) (holding that District Court properly dismissed § 1983 claim asserting speedy trial claim as *Younger* abstention applied).

Speedy trial claims are best to be considered after the facts have developed at trial. *See United States v. MacDonald*, 435 U.S. 850, 858 (1978). Smart would have had the opportunity to raise his speedy trial claim during his state trial and any subsequent appellate proceedings. *See Moore*, 515 F.2d at 449. At that point, after he had exhausted such a claim in the state courts, he could then have brought a petition for writ of habeas corpus in this Court. *See id.* It is further worth noting that to the extent Smart may be seeking his release, a petition for writ of habeas corpus would be his exclusive remedy in this Court. *See Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973); *see also Duran*, 399 F. App'x at 759 (citation omitted). Therefore, Smart's speedy trial claim will be dismissed with prejudice for failure to state a claim upon which relief may be granted as any amendment to the complaint on this claim would be futile.

---

[4] While *Younger* abstention would be inappropriate if a plaintiff can establish that the state proceedings have been brought against him in bad faith or to harass him, or that other extraordinary circumstances exist, *see Duran*, 399 F. App'x at 759 n.5 (citing *Schall v. Joyce*, 885 F.2d 101, 106 (3d Cir. 1989), Smart does not allege that any such circumstances exist in this case.

B. <u>Unreasonable Search/Seizure and Failure to Train/Supervise Claims</u>

The Court will permit Smart's unreasonable search/seizure as well as his failure to train/supervise claims to proceed past screening. With respect to Smart's failure to train/supervise claim, while Smart does not allege a pattern of violations that is usually required to state such a claim, *see Kline ex rel. Arndt v. Mansfield*, 255 F. App'x 624, 629 (3d Cir. 2007) (citing *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000) (per curiam) (citing *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 408-09 (1997))):

> in a narrow range of circumstances, a violation of federal rights may be a highly predicable consequence of a failure to equip law enforcement officers with specific tools to handle recurrent situations. The likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights could justify a finding that policymakers' decision not to train the officer reflected "deliberate indifference" to the obvious consequence of the policymakers' choice – namely, a violation of a specific constitutional or statutory right.

*Bryan Cnty.*, 520 U.S. at 409. Accordingly, it is on this basis that the Court will permit the failure to train claim to proceed past screening.

## VI.    CONCLUSION

For the foregoing reasons, Nichols will be administratively terminated as a plaintiff in this action. Furthermore, Smart's speedy trial claim will be dismissed with prejudice for failure to state a claim upon which relief may be granted. The complaint will be permitted to proceed in all other respects. An appropriate order will be entered.

DATED:   November 12, 2014

s/Robert B. Kugler<br>
ROBERT B. KUGLER<br>
United States District Judge