# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

SALAHUDDIN F. SMART,      :
              :
  Plaintiff,      :  Civ. No. 14-2302 (RBK) (AMD)
              :
v.            :
              :    **OPINION**
CRAIG FOX, et al.,      :
              :
  Defendants.      :
_____:

**ROBERT B. KUGLER, U.S.D.J.**

## I. INTRODUCTION

Plaintiff Salahuddin F. Smart ("Plaintiff") is a participant in the Intensive Supervision Program ("ISP" or "Program"). The ISP is "essentially a post-sentence, post-incarceration program of judicial intervention and diversion back to the community." *State v. Clay*, 553 A.2d 1356, 1357 (N.J Super. Ct. App. Div. 1989). The judicially-created Program is an example of the courts' "inherent responsibility and power to manage efficiently the criminal justice system." *Id.* (internal citations omitted).

On April 10, 2014, Plaintiff filed with the Court a Complaint in which he alleges that two current employees of the ISP violated his right to be free from unreasonable search and seizure under the Fourth Amendment to the United States Constitution. (*See* ECF No. 1.) He also alleged that the ISP violated his right to a speedy trial. (*Id.*) In an Opinion dated November 12, 2014, the Court dismissed Plaintiff's speedy trial claim and allowed Plaintiff's Fourth Amendment claim to proceed. (*See* ECF No. 4.) On or about January 30, 2015, Defendants Craig Fox, Shirley Lennon, ISP, and ISP Southern Regional Office ("Defendants" or "Movants") filed the instant motion to dismiss with the Court pursuant to FED R. CIV. P. 12(b)(6) or for summary judgment

under Federal Rule of Civil Procedure 56. (*See* ECF No. 13.) On September 9, 2015, Plaintiff

also moved for summary judgment pursuant to Rule 56. For the following reasons, Defendants'

motion for summary judgment will be granted and Plaintiff's motion for summary judgment will

be denied. Accordingly, judgment will be entered in favor of the Defendants.

## II. BACKGROUND

Plaintiff is a participant in the ISP. The ISP is a court administered program originally

designed by the Administrative Office of the Courts ("AOC"). *See Forchion v. ISP*, 240 F. Supp.

2d 302, 304 (D.N.J. 2003) (citing *State v. Cannon*, 128 N.J. 546 (1992)). It is funded by the

Legislature and is administered by the AOC. *See id.* The ISP "rests between traditional probation

and parole," but is a part of the judiciary. *Clay*, 553 A.2d at 1358. Originally designed as an

alternative to lock up in overcrowded prisons for those convicted of minor offenses, the ISP

requires a participant be employed full time, regularly tested for drugs and alcohol, maintain a 6

p.m. to 6 a.m. curfew, submit to searches, perform regular community service, and refrain from

traveling freely. *See id.* at 1358-1359.

In April 2013, Plaintiff applied for entry into the ISP. (*See* ECF No. 13-7.) Plaintiff was

interviewed by Officer Steven Colby and provided materials including the Standard Conditions

of the ISP ("Conditions"). (*See* ECF No. 13-5 ¶ 10.) The Conditions include agreeing to

participate in all medical procedures, agreeing to submit to personal and residential searches any

time, and agreeing to anytime drug testing. (*See* ECF No. 13-5 ¶¶ 12-15.) On or about August 3,

2013, Plaintiff entered the ISP and received a second copy of the Conditions, signing an

acknowledgment of receipt. (*See* ECF No. 13-8.) Officer Kevin McDonald then reviewed the

Conditions with Plaintiff. (*See* ECF No. 13-5 ¶ 11.)

The ISP adheres to the procedures set forth in ISP Guidelines Handbook (the "Handbook"). (*See* ECF No. 13-5 ¶ 19; ECF No. 13-10.) ISP's policy on drug testing requires "direct observation," or "observing the voiding of urine directly from the participant to the specimen jar." (*Id.*) Defendant Craig Fox, an ISP officer, supervised Plaintiff from October 3, 2013 to December 5, 2013. (ECF No. 13-5 ¶ 17.) In December 2013, Defendant Fox entered Plaintiff's home and ordered him to provide a urine sample for drug testing. (ECF No. 1.) Defendant Fox told Plaintiff that he if did not allow for direct observation he would be sent back to jail as stated in the Conditions he signed. (*Id.*; *see also* ECF No. 13-8.) Plaintiff did not want Defendant Fox to directly observe him urinating, and claims that Defendant Fox's instruction to do so violated his right to be free from unreasonable searches and seizures under the Fourth Amendment. (*Id.*)

Plaintiff brings the following claims against Defendants both in their official and individual capacities under 42 U.S.C. § 1983:

> 1) Defendant Fox violated Plaintiff's Fourth Amendment right to be free from unreasonable search and seizure when Plaintiff was made to urinate in front of Defendant Fox.
>
> 2) Defendants Lennon, ISP, and ISP Southern Regional Office are similarly liable based on a failure to train/supervise theory regarding the proper way to conduct urinalysis.

(*See* ECF No. 1; ECF No. 16 at 11-13.)

### III. STANDARD OF REVIEW

A. Section 1983 Actions

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to

> be subjected, any citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured…

*See* 42 U.S.C. § 1983.

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

## B. Summary Judgment Motions[1]

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Cotton*, 134 S. Ct. at 1863. The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof  . . . the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

---

[1] Defendants also brought their motion, in the alternative, as a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6). As the Court considers material outside of Plaintiff's Complaint, Defendants' motion will be treated solely as a motion for summary judgment.

If the moving party meets its threshold burden, the opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *See Anderson*, 477 U.S. at 248; *see also* FED. R. CIV. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006) ("To prevail on a motion for summary judgment, the nonmoving party needs to show specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial.")

The standard does not change when, as here, the parties have essentially filed cross-motions for summary judgment. *See Wimberly Allison Tong & Goo, Inc. v. Travelers Property Cas. Co. of America*, 559 F. Supp. 2d 504, 509 (D.N.J. 2008) (citing *Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987)). Cross-motions for summary judgment are "no more than a claim by each side that it alone is entitled to summary judgment." *Wimberly*, 559 F. Supp. 2d at 509 (internal citations omitted). If a review of cross-motions for summary judgment reveals no genuine issue of material fact, judgment may be entered in favor of the deserving party. *See Iberia Foods Corp. v. Romeo, Jr.*, 150 F.3d 298, 302 (3d Cir. 1998) (internal citations omitted).

## IV. DISCUSSION

### A. Defendants ISP, ISP Southern Regional Office, Fox, and Lennon (in their official capacities) are not "persons" under § 1983 and thus are not amenable to suit.

Plaintiff asserts all claims against Defendants both individually and in their official capacities. Defendants counter that they are not amenable to suit under § 1983 because they are either state entities or agents of state entities and therefore not "persons" under the law. The Court agrees.

5

To be liable within the meaning of § 1983, a defendant must be a "person." The Supreme Court held in *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989), that a State or an official of a State acting in his or her official capacity is not a "person" within the meaning of § 1983. However, the Court was careful to note that, "our holding here … applies only to States or governmental entities that are considered arms of the state for Eleventh Amendment purposes." *Id*. at 70 (internal quotations omitted).

The Eleventh Amendment provides that, "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. This immunity is available to all States, as well as any entity considered "an arm of the state." *See Lake Country Estates v. Tahoe Regional Planning Agency*, 440 U.S. 391 (1979); *Mt. Healthy City Bd. of Educ. v. Boyle*, 429 U.S. 274 (1977); *Edelman v. Jordan*, 415 U.S. 651 (1974). In general, "a suit by private parties seeking to impose liability which must be paid from public funds in a state treasury is barred from federal court by the Eleventh Amendment," unless such immunity is explicitly waived. *Bell v. Holmes*, Civ. No. 13-6955, 2015 WL 851804, at *3 (D.N.J. Feb. 23, 2015); *see also Edelman,* 415 U.S. at 663. It is important to note that § 1983 does not override a State's Eleventh Amendment immunity. *See Quern v. Jordan*, 440 U.S. 332, 340 (1979). Thus, in order for a State or one of its agencies to be subject to a suit for money damages, it must consent to such a suit.

Here, Defendants Fox and Lennon are employees of the ISP, which is a department of the Probation Services Division of the Administrative Office of the Courts, therefore making it a state entity and thus an "arm" of the State of New Jersey. *See* N.J. STAT. ANN. § 2B:1 *et seq*; *Allen v. Administrative Office of Pennsylvania Courts*, 270 F, App'x. 149, 150 (3d Cir. 2008)

(noting that the Administrative Office of the Courts is a state agency, and therefore not a 'person' within the meaning of § 1983). Because Defendants ISP and ISP Southern Regional Office are themselves state entities, they are not considered "persons" within the meaning of § 1983 and thus the Complaint against them is barred by the Eleventh Amendment. Defendants Fox and Lennon are therefore agents of a state entity, meaning they are also not "persons" within the meaning of § 1983 when acting in their official capacities. *See Betts v. New Castle Youth Development Center*, 621 F.3d 249, 254 (3d Cir. 2010) ("Individual state employees sued in their official capacity are also entitled to Eleventh Amendment immunity…") (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)).

Because Defendants ISP, ISP Southern Regional Office, Fox in his official capacity, and Lennon in her official capacity are not considered persons within the meaning of 42 U.S.C. § 1983, summary judgment shall be granted in favor of the Defendants on these claims.

B. Defendants Fox and Lennon, in their Individual Capacities, did not Violate Plaintiff's Fourth Amendment Rights.

Plaintiff alleges that his Fourth Amendment rights were violated when Defendant Lennon failed to train and/or supervise Defendant Fox, and Defendant Fox proceeded to force Plaintiff to urinate before him or return to jail. (*See* ECF No. 1 at 6-7.) Defendants argue that they are entitled to qualified immunity, mandating that summary judgment should be awarded in favor of them on these claims as well.  (*See* ECF No. 13-2 at 24-26.) The Court need not reach the immunity question, however, because Plaintiff's Fourth Amendment rights were not violated by direct observation drug testing.

Plaintiff alleged that Defendant Fox entered Plaintiff's home unannounced and asked Plaintiff to urinate in front of him for use in urinalysis or risk returning to jail. This method of drug testing, called "direct observation," is required by the New Jersey Judiciary (*See* ECF No.

13-11.) Plaintiff refused, not wanting Defendant Fox to see his privates. Defendant Fox then ordered Plaintiff to pull his pants down or risk going back to jail. Plaintiff did as he was told, suffering humiliation. Defendants Fox and Lennon claim that Defendant Fox's conduct was both required by the office and compliant with the Fourth Amendment.

The Fourth Amendment guarantees the "right of the people to be secure in their persons ... against unreasonable searches and seizures." U.S. CONST. amend. IV. It is uncontested that "the government's collection and testing of an employee's urine constitutes a search under the Fourth Amendment." *Skinner v. Railway Labor Executives' Assn.*, 489 U.S. 602, 617 (1989). What is contested, however, is whether or not this search is "unreasonable" under the Fourth Amendment when used in direct observation drug testing.

Citizens, in general, are entitled to a "reasonable expectation of privacy" in their persons and private residences that can only be invaded in a limited number of circumstances. *See United States v. Jones*, 132 S. Ct. 945, 950 (2012). By contrast, those subject to an "established variation on imprisonment," such as probationers and parolees, have a greatly diminished expectation of privacy. *See United States v. Knights*, 534 U.S. 112, 119 (2001) ("Inherent in the very nature of probation is that probationers [and parolees] do not enjoy the absolute liberty to which every citizen is entitled.") (quoting *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972)).

In *Wilcher v. City of Wilmington*, 139 F.3d 366 (3d Cir. 1998), a group of firefighters challenged the method of urinalysis at issue here, namely direct observation. The court there noted that firefighters, like probationers, have a diminished expectation of privacy and had consented to random drug testing. *Id*. at 374. The court there went on to hold that the direct observation method of drug testing does not violate the Fourth Amendment rights of those with a diminished expectation of privacy when there is an interest in preventing cheating. *Id*. at 378

(relying on *Skinner*, 489 U.S. at 629 n. 9; *Nat'l Treasury Employees Union v. Von Raab*, 489 U.S. 656, 677 (1989); *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 659 (1995)). Later, in *United States v. Knights*, the Supreme Court held that all warrantless searches, supported by reasonable suspicion and authorized by a probation condition, satisfy the Fourth Amendment. *See* 534 U.S. at 119. Five years after *Knights*, the Court extended that reasoning to support suspicion-less searches of anyone in "an established variation of imprisonment," so long as the searches are authorized by statute. *See Samson v. California*, 547 U.S. 843, 852 (2006) (internal citations omitted).

Because the Third Circuit in *Wilcher*, *supra*, decided that direct observation drug testing complies with the Fourth Amendment when those being tested have a diminished expectation of privacy, the search to which Plaintiff objects is reasonable under the Fourth Amendment. As an ISP participant under court supervision in lieu of confinement, Plaintiff has a drastically diminished expectation of privacy. *See Knights*, 534 U.S. at 119 ("The probation condition … significantly diminished Knights' reasonable expectation of privacy."). Plaintiff's diminished expectation of privacy coupled with the recognized government interest in preventing cheating on drug tests, *see Wilcher*, *supra* at 378, makes the search of Plaintiff's person constitutional. Additionally, even if the Third Circuit had never decided *Wilcher*, the search at issue here would still be constitutional under the Fourth Amendment. Because Plaintiff is under court supervision and the direct observation testing is done in compliance with the New Jersey Judiciary's dictates, the testing at issue falls within the rule the Supreme Court announced in *Samson*. *See* 547 U.S. at 852; (*See* ECF No. 13-11 at 12) ("The individual conducting the [drug] test <u>MUST</u> directly observe the urine sample go from the participant's body to the testing cup.") (emphasis in original).

Therefore, Plaintiff fails to state an underlying constitutional claim arising from the direct observation drug test. Because Plaintiff fails to show that his constitutional rights were violated by the drug test administered by Defendant Fox, it follows that Defendant Lennon similarly cannot be liable for failure to train and/or supervise Defendant Fox. *See Santiago v. Warminster Tp.*, 629 F.3d 121, 130 (3d Cir. 2010) ("Of course, [supervisors] could only be liable if the people they supposedly directed to violate [someone's] rights actually did so.") (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)).

## VI. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment will be granted and Plaintiff's motion for summary judgment will be denied. An appropriate order will be entered.


DATED:   September 30, 2015

s/Robert B. Kugler
ROBERT B. KUGLER
United States District Judge